pUNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2022 JUN 28  PM 2:57

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.                                   CASE NO. 8:22 cr 235 FKM - AAS

18 U.S.C. § 1343

MANUEL DOMINGUEZ

**INDICTMENT**  SEALED

The Grand Jury charges:

**COUNT ONE**
**(Wire Fraud)**

**A.    Introduction**

At times relevant to this Indictment:

1.    MANUEL DOMINGUEZ, a resident of the Middle District of Florida
and a former member of the United States Air Force ("USAF") who helped develop
virtual reality training for military physicians during his tenure with the USAF,
served as Deputy Chief Learning Officer for Veterans Affairs ("VA").
DOMINGUEZ used his connections and influence at the VA to help secure
consulting subcontracts for the Salus Group, in exchange for payments to companies
he controlled.

2.    CIO ADVISORS, LLC ("CIO"), a shell company established in
Delaware and later Wyoming, was purportedly used by DOMINGUEZ's spouse to
engage in the business of providing technical support services and website

management to businesses. DOMINGUEZ opened an account in the name of CIO at Financial Institution #1, and he used CIO to receive VA funds paid to the SALUS Group, a subcontractor on VA contracts for medical simulation and education training programs.

3.      SIMULOCITY, LLC ("SIMULOCITY"), a shell company established in Wyoming, was purportedly used by DOMINGUEZ's spouse to engage in the business of providing technical support services and website management to businesses. DOMINGUEZ used an account ending in -3817 in the name of SIMULOCITY at Financial Institution #1 to receive VA funds paid to the SALUS Group, a subcontractor on VA contracts for medical simulation and education training programs.

4.      BUSINESS #1, a small business specializing in providing strategic information technology solutions to the federal government, was awarded VA contracts to oversee aspects of the VA's development of medical simulation and education training programs.

5.      The SALUS GROUP ("SALUS"), a Texas corporation owned by a former USAF colleague of DOMINGUEZ, specialized in medical modeling and simulation education and training programs. DOMINGUEZ steered subcontracts for consulting services in support of VA contracts to SALUS, and caused SALUS to pay a portion of its consulting fees to CIO and later SIMULOCITY.

6.      Financial Institution #1 is a bank headquartered in Charlotte, North Carolina, with locations in the Middle District of Florida.

2

**B.** **Scheme and Artifice**

7.      Beginning on an unknown date, but no later than in or around September 2013, and continuing through on or about July 5, 2017, in the Middle District of Florida and elsewhere, the defendant,

MANUEL DOMINGUEZ,

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises.

**C.** **Manner and Means of the Scheme and Artifice**

8.      The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud, included, among others, the following:

a.      It was part of the scheme and artifice that the defendant would and did make use of a second company called CIO, formed in another jurisdiction.

b.      It was further a part of the scheme and artifice that the defendant would and did represent that his spouse served as the President and Chief Executive Officer of CIO.

c.      It was further a part of the scheme and artifice that the defendant would and did recommend and promote, including via email communication, BUSINESS #1 as a highly qualified candidate for a VA contract to create medical simulation and education training programs.

d.      It was further a part of the scheme and artifice that the defendant would and did communicate, including via telephone, with SALUS's owner about

3

SALUS securing a consulting subcontract in support of a VA contract awarded to BUSINESS #1, including his intention to inflate the cost of the consulting subcontract to provide for payments by SALUS to CIO.

        e.     It was further a part of the scheme and artifice that the defendant would and did cause the cost of SALUS's consulting subcontract with BUSINESS #1 to be inflated in order to provide for payment by SALUS to CIO.

        f.     It was further a part of the scheme and artifice that the defendant would and did cause BUSINESS #1 to enter into a consulting subcontract with SALUS to serve as a medical subject matter expert in support of BUSINESS #1's VA contract. Thereafter, the defendant would and did help SALUS secure other consulting subcontracts with other contractors working in support of VA contracts.

        g.     It was further a part of the scheme and artifice that the defendant would and did cause SALUS to pay CIO typically $4,000 per month, purportedly for 24/7 website support and management. In truth and in fact, DOMINGUEZ procured these payments as compensation for using his connections and influence at the VA to help secure consulting subcontracts for SALUS.

        h.     It was further a part of the scheme and artifice that the defendant would and did cause SALUS payments to be deposited into CIO's bank account at Financial Institution #1, and would and did cause the transfer of the majority of said funds to personal bank accounts in the name of the defendant and/or his family members for their personal enrichment.

i.     It was further a part of the scheme and artifice that the defendant would and did make use of a preexisting company renamed SIMULOCITY, and would and did cause his spouse to be identified as a "member" of the company.

j.     It was further a part of the scheme and artifice that the defendant would and did cause SALUS to pay SIMULOCITY typically $4,000 per month, purportedly for 24/7 website support and management. In truth and in fact, DOMINGUEZ procured these payments as compensation for using his connections and influence at the VA to help secure consulting subcontracts for SALUS.

k.     It was further a part of the scheme and artifice that the defendant would and did cause SALUS payments to be deposited into SIMULOCITY's bank account at Financial Institution #1, and would and did cause the transfer of the majority of said funds to personal bank accounts in the name of the defendant and/or his family members for their personal enrichment.

l.     It was further a part of the scheme and artifice that the defendant would and did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, acts performed in furtherance of the scheme.

**D.     Execution of the Scheme and Artifice**

9.     On or about the date set forth below, in the Middle District of Florida, the defendant,

MANUEL DOMINGUEZ,

knowingly and intentionally executed the aforesaid scheme and artifice, by transmitting and causing to be transmitted, by means of wire and radio

5

communications in interstate and foreign commerce, the writings, signs, signals, pictures, and sounds detailed below:

| Count | Date | Description of Wire Communication |
|-------|------|-----------------------------------|
| One | 7-5-2017 | Defendant caused a wire transfer in the amount of $8,000 to be sent from outside of Florida to the Financial Institution #1 account ending in -3817 in the name of SIMULOCITY within the Middle District of Florida |

In violation of 18 U.S.C. § 1343.

### FORFEITURE

1.     The allegations contained in Count One of this Indictment are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.     Upon conviction of the violations alleged in Count One of this Indictment, in violation of 18 U.S.C. § 1343, the defendant,

MANUEL DOMINGUEZ,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations.

3.     The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of $176,000, representing the proceeds of the violation.

4.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred, sold to, or deposited with a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or,

    e.     has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

Foreperson

ROGER B. HANDBERG
United States Attorney

By:

Candace Garcia Rich
Assistant United States Attorney

By:

Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

8

## UNITED STATES DISTRICT COURT
## Middle District of Florida
## Tampa Division

### THE UNITED STATES OF AMERICA

vs.

### MANUEL DOMINGUEZ

### INDICTMENT

Violations: 18 U.S.C. § 1343

A true bill,

_____

Foreperson

Filed in open court this 28th day

of June 2022.

_____

Clerk

Bail $_____